| BDO USA, P.C. v Morris |
| --- |
| 2024 NY Slip Op 34268(U) |
| December 2, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 652352/2020 |
| Judge: Andrew Borrok |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 53

---------------------------------------------------------------------------------X

BDO USA, P.C.,

                              Plaintiff,

                - v -

STEPHEN MORRIS, JAMES ANDREW STILES,

                        Defendant.

---------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 652352/2020 |
| **MOTION DATE** | 10/11/2024 |
| **MOTION SEQ. NO.** | 055 |

**DECISION + ORDER ON MOTION**

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 055) 1205, 1206, 1209, 1210, 1212

were read on this motion to/for               REARGUMENT/RECONSIDERATION      .

Upon the foregoing documents, Stephen Morris's motion (Mtn. Seq. No. 055) for reargument is

DENIED.


A motion for leave to reargue must be based on matters of fact or law allegedly overlooked or

misapprehended by the Court in determining the prior motion but cannot include any matters of

fact not offered on the prior motion (CPLR 2221[d]).  A motion for leave to renew "shall be

based upon new facts not offered on the prior motion that would change the prior determination

or shall demonstrate that there has been a change in the law that would change the prior

determination; and shall contain reasonable justification for the failure to present such facts on

the prior motion." (CPLR § 2221[e].   Reargument is not intended "to afford the unsuccessful

party successive opportunities to reargue issues previously decided or to present arguments

different from those originally asserted" (*Haque v Daddazio*, 84 AD3d 940, 242 [2d Dept 2011];

652352/2020  BDO USA, P.C., vs. STEPHEN MORRIS,
Motion No.  055

Page 1 of 6

1 of 6

*Foley v Roche*, 68 AD2d 558 [1st Dept 1979]). This is precisely what Mr. Morris attempts to do here.

Reference is made to a Decision and Order (the **Prior Decision**; NYSCEF Doc. No. 1119) dated September 12, 2024 pursuant to which the Court, among other things, granted BDO's motion for summary judgment that Mr. Morris breached Section 7(a) his Manager Agreement by (i) causing Lexicon, a client of BDO, to terminate its relationship with BDO and (ii) causing Meissa, a prospective client of BDO, to terminate its relationship with BDO. The facts are set forth in the Prior Decision. Familiarity is presumed. All terms not defined shall have the meaning ascribed thereto in the Prior Decision.

In support of his motion, although Mr. Morris himself used the terms "solicit" or "solicitation" in his own papers (*see, e.g.,* NYSCEF Doc. Nos. 1106 at 12 ["BDO failed to provide clear evidence indicating that Mr. Morris solicited Lexicon…"]; 1052 at 21 [section heading titled "No Client Solicitation"]), he now leans in too heavily to the Court's use of the word to incorrectly argue that his motion should be granted because the Prior Decision was based on a finding of mere solicitation such that he did not violate Section 7(a) of the Manager Agreement or that he has created an issue of fact based on the testimony of (a) Lexicon's corporate designee Praveen Tyle and (b) Meissa CEO Martin Moore, as to whether his conduct caused Lexicon and Meissa, respectively, to terminate their relationships with BDO. He is wrong.

Section 7(a) of the Manager Agreement provides:

652352/2020   BDO USA, P.C., vs. STEPHEN MORRIS,
Motion No. 055

Page 2 of 6

[* 2]

7.  In consideration of the Firm granting Employee access to Confidential Information and for employing Employee in a Manager position, it is agreed that prior to, at, or within eighteen (18) months after, his/her departure from the Firm (whether by resignation, termination or otherwise):

(a) If, without the specific written consent of the Chief Executive Officer, or his/her designee, Employee performs by himself/herself, or through an entity with which he/she is or becomes associated, or arranges for such entity to perform, engagements involving accounting, auditing, tax, investment advisory or consulting services, or any related services, for a Client (defined below) or causes a Client or Prospective Client (defined below) of the Firm to terminate its relationship with the Firm through unfair competition or business practices, including through the unauthorized use of Confidential Information, then Employee will compensate the Firm for the loss and damages suffered by the Firm by reason of lost engagement(s) by paying liquidated damages in an amount equal to the greater of -EITHER- (i) (A) one and one-half times the fees charged for such engagement(s) by the Firm for services performed by the Firm either (1) during the last full fiscal year or (2) the 12 month period prior to the last date upon which the Firm performed services for the Client which the Firm loses as a result of such breach, whichever is greater, or (B) in the case of a Prospective Client or a prospective engagement for a Client, one and one-half times the amount of the proposed fee for the next 12 months of such lost engagement(s) - OR- (ii) one and one-half times the amount of the fee paid for such lost engagement(s) in the 12 month period following Employee's departure from the Firm. For purposes of this Paragraph 7(a), a "Client" is a client with whom Employee has a relationship which the Firm enabled him/her to acquire, develop and/or otherwise maintain while employed by the Firm through his/her performance of services for such client or other activity, or as to whom Employee has Confidential Information obtained through the Firm, and a "Prospective Client" is any person, company, partnership or other entity to which the Firm has made an oral or written proposal to perform services and for which Employee was involved in such proposal or had access to Confidential Information regarding such proposal.

(NYSCEF Doc. No. 147 ¶ 7[a]).

In the Prior Decision, the Court held that Mr. Morris breached the terms of his Manager Agreement by diverting Lexicon and Meissa away from BDO and causing those firms to terminate their relationships with BDO (*see* NYSCEF Doc. No. 1119 at 29-30, 32). To the extent that the Court used the words "solicit" and "solicitation" it simply was in response to the

652352/2020  BDO USA, P.C., vs. STEPHEN MORRIS,
Motion No. 055

Page 3 of 6

3 of 6

submissions of Mr. Morris himself and in otherwise evaluating whether Mr. Morris "cause[d] a Client or Prospective Client of [BDO] to terminate its relationship with [BDO]" (*id.*).

As this Court found in its Prior Decision, Lexicon was a BDO client[1] and Mr. Morris's relationship with Lexicon was one that BDO "enabled [Mr. Morris] to acquire, develop and/or otherwise maintain" (NYSCEF Doc. No. 1119 at 29-32). While still employed at BDO, Mr. Morris performed work for Lexicon and arranged and participated in a call between Lexicon and Everglade (*id.*). Just a few hours after this call, Lexicon sent Everglade materials related to the very same work that Mr. Morris was performing for Lexicon while at BDO, and signed a contract with Everglade to perform this work the following day (*id.*; NYSCEF Doc. Nos. 814, 819, 820).

After Mr. Morris officially moved over to Everglade, he continued to perform work for Lexicon (*see* NYSCEF Doc. Nos. 948, 1014). It thus was wholly irrelevant that Mr. Tyle indicated that Lexicon found Everglade through a Google search (NYSCEF Doc. No. 811 at 100:10-101:3, 209:9-18) because to the extent such testimony was inconsistent with the balance of evidence as to Mr. Morris' violations of Section 7(a) with respect to Lexicon, such inconsistency would in effect "contradict[] every other piece of evidence in the record" such that it did not create an issue of fact for trial (*Carthen v Sherman*, 169 AD3d 416, 417 [1st Dept 2019]). Equally important, Mr. Morris was prohibited by the terms of his Manager Agreement from "arrang[ing]" any entity "with which [Mr. Morris] becomes associated" to "perform[]

---

[1] Although Mr. Morris previously argued that Lexicon was not a BDO client under the terms of the Manager Agreement, Mr. Morris does raise an issue as to the Court's finding on this issue and does not seek to reargue on this ground.

652352/2020  BDO USA, P.C., vs. STEPHEN MORRIS,                              Page 4 of 6
Motion No.  055

4 of 6

[* 4]

engagements involving accounting, auditing, tax, investment advisory or consulting services, or any related services, for a Client" of BDO (NYSCEF Doc. No. 147 7 ¶ 7[a]). The record before the Court demonstrated, without any evidence to the contrary, that Mr. Morris arranged for Everglade to perform consulting services for Lexicon such that Mr. Tyle's testimony was irrelevant as to these facts.

Mr. Moore's testimony similarly did not create a question of fact. As previously indicated, initially the Court notes, that the documentary evidence does not support Mr. Morris's argument that Meissa terminated its negotiations with BDO before Mr. Moore sought out Mr. Morris via LinkedIn (*see* NYSCEF Doc. Nos. 794, 795 [email timestamps demonstrating Mr. Moore contacted Messrs. Morris and Jia-Sobota prior to terminating negotiations with BDO]).

But to the point -- Meissa was a prospective client in contractual negotiations with BDO (NYSCEF Doc. No. 1119 at 32). After learning that Mr. Morris had departed BDO, Mr. Moore discovered that Mr. Morris was working for EverGlade via LinkedIn and, after Mr. Moore connected with Mr. Morris via LinkedIn, Mr. Morris introduced Mr. Moore to Mr. Jia-Sobota (*id.*). Messrs. Jia-Sobota and Moore then entered into correspondence, which culminated with Meissa entering into an agreement with EverGlade to perform the same services it had been negotiating with BDO (*id.*). Thus, although Mr. Moore testified that he learned of Mr. Morris's departure from BDO from another BDO employee, Lisa Cozza, who apparently had emailed him on May 29, 2020 (attaching a copy of a complaint filed against Eric Jia-Sobota and naming Mr. Morris as a co-conspirator [NYSCEF Doc. Nos. 791 at 86:25-87:21; 794]) and that he found it to be "aggressive," he also testified that he was concerned over Mr. Morris's departure from BDO

652352/2020 BDO USA, P.C., vs. STEPHEN MORRIS,
Motion No. 055

Page 5 of 6

5 of 6

(NYSCEF Doc. No. 791 at 87:15-21, 88:15-19) and it is undisputed that Mr. Morris caused the connection to Mr. Jia-Siaboto and Everglade. These undisputed facts establish a violation of the Manager Agreement. Accordingly, Mr. Moore's testimony did not create a question of fact and reargument is simply inappropriate.

The Court has considered the parties' remaining arguments and found them unavailing.

Accordingly, it is hereby

ORDERED that Mr. Morris's motion to reargue (Mtn. Seq. No. 055) is denied.

20241202094446ADORROKDF48AFA13716A371BB88BDFC6BB56BEA

__12/2/2024__
DATE

ANDREW BORROK, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

652352/2020  BDO USA, P.C., vs. STEPHEN MORRIS,
Motion No.  055

Page 6 of 6

6 of 6

[* 6]